IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:21-cv-01378-SKC

ROBIN SLOVER,

      Plaintiffs,

v.

UNIVERSITY OF COLORADO, through its board,
THE REGENTS OF THE UNIVERSITY OF COLORADO, a corporate body,

      Defendants.

---

**ORDER RE: DEFENDANT'S MOTION TO DISMISS [DKT. 10]**

---

When she filed this action, Dr. Robin Slover—a physician, board-certified in

anesthesiology and pain management, and also a member of the Church of the Latter-

Day Saints (the Church)—was seventy years old and spent most of her career working

for the University of Colorado. According to her Complaint, following a distinguished

tenure with the University, she was increasingly ostracized by her colleagues.  [Dkt.

1 at ¶¶12-35.][1] She alleges, in July 2018, Dr. Thomas Majcher (the Director of

Pediatric Anesthesiology at the University) convened a meeting with Dr. Sheryl Kent

and informed Plaintiff there were reports she was sleeping in her office, missing

appointments, and confusing patients' names. [*Id.* at ¶47.] Majcher placed Plaintiff

---

[1] The Court uses "[Dkt.__]" to refer to specific docket entries in CM/ECF.

1

on a thirty-day leave of absence and required her to complete a psychological evaluation. [*Id*. at ¶48.] Majcher also drafted and circulated a memorandum blaming the Pediatric Pain Management Clinic's disfunction on Plaintiff and concluding Plaintiff was exhibiting signs of cognitive decline. [*Id*.at ¶51.]

But when Plaintiff was subsequently evaluated by Dr. Donald Misch of the Colorado Physician Health Program, she received a perfect score in the assessment for dementia. Dr. Misch also found "no evidence [Plaintiff] suffers from a medical or psychiatric condition, including a substance abuse disorder, that would impact her ability to practice medicine with reasonable skill and safety to patients." [*Id*. at ¶56.] Plaintiff received clearance to return to work but was, nevertheless, made to serve the entirety of her thirty-day leave. [*Id*. at ¶58.] According to the Complaint, after she returned to work, Plaintiff's colleagues scrutinized her every move to provide critiques regarding her performance. [*Id*. at ¶¶63-64.]

In January 2019, Majcher sent an email to the head of the Medical Executive Committee of Children's Hospital of Colorado and asserted again that Plaintiff was in cognitive decline. [Id. at ¶¶70-76.] Majcher made these claims despite making no clinical observations or conducting any interviews with patients or staff. [*Id*.] The following day, based on the email, the Medical Executive Committee suspended Plaintiff's patient privileges. [*Id*. at ¶78.] Plaintiff's compensation and benefits were

ultimately terminated in June 2019. [*Id.* at ¶80.] Following a series of appeals the Medical Executive Committee upheld Plaintiff's suspension.[2]

Plaintiff initiated this action against the University on May 20, 2021, asserting claims under Title VII of the Civil Rights Act, the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), the ADA Amendments Act (ADAAA), the Rehabilitation Act, and the Colorado Anti-Discrimination Act (CADA). She also asserts a claim for "equitable estoppel."[3] The University moved for dismissal based on a lack of jurisdiction and failure to state claims upon which relief can be granted. [Dkt. 10.] The Court has reviewed the Complaint, the Motion and related briefing, and the applicable law. No hearing is necessary. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

**STANDARDS OF REVIEW**

**A.     Fed. R. Civ. P. 12(b)(1)**

"Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'" *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citing *Arbaugh v. Y & H Corp.*,

---

[2] The Court will discuss additional allegations as they relate to the analysis.

[3] Plaintiff originally named Majcher as a Defendant, but he was dismissed on August 26, 2021. [Dkts. 24 and 25.]

546 U.S. 500 (2006)). Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis added).

**B.      Fed. R. Civ. P. 12(b)(6)**

When considering whether a complaint states plausible claims for relief under Rule 12(b)(6), the Court accepts the well-pleaded facts as true and views the allegations in the light most favorable to the non-movant. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010). The Court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

The *Twombly/Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Id.* at 678–79. The first prong requires the court to identify which allegations "are not entitled to the assumption of

truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). But the standard is a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

### A.    Eleventh Amendment Immunity

The University first contends Plaintiff's ADA and ADAAA, ADEA, CADA, and equitable estoppel claims are barred by the doctrine of sovereign immunity. The Eleventh Amendment to the U.S. Constitution provides that federal courts may not hear suits against state entities absent a waiver of the state's immunity. *See, e.g., Tennessee v. Lane*, 541 U.S. 509, 517 (2004). In this Circuit, it is well-settled that the University is a state entity capable of claiming Eleventh Amendment immunity. *See Sturdevant v. Paulsen*, 218 F.3d 1160, 1170 (10th Cir. 2000) ("the University of Colorado is an arm of the state"); *Rozek v. Topolnicki*, 865 F.2d 1154, 1158 (10th Cir. 1989). Although Plaintiff, in her Response, offers several reasons why she should be

permitted to proceed, she has not cited any persuasive or binding precedent that would permit this Court to ignore the Tenth Circuit's clear holdings otherwise. [Dkt. 15 at pp.4-8.] And it will not do so. *See Dermansky v. Univ. of Colorado*, 445 F. Supp. 3d 1218, 1223 (D. Colo. 2020).

The question, therefore, is whether Congress abrogated, or the State of Colorado waived, the University's Eleventh Amendment immunity for Plaintiff's claims. *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). A waiver of Eleventh Amendment immunity must be express and unequivocal. *V-1 Oil Co. v. Utah Dept. of Pub. Safety*, 131 F.3d 1415, 1421 (10th Cir. 2002).

Plaintiff argues her claims are not barred because she is seeking equitable relief. But Defendant is correct that Eleventh Amendment immunity bars claims against a state regardless of the relief sought. *Smith v. Plati*, 56 F. Supp. 2d 1195, 1200 (D. Colo. 1999) (citing *Cory v. White*, 457 U.S. 85, 91 (1982)), *aff'd*, 258 F.3d 1167 (10th Cir. 2001). To the extent Plaintiff relies on the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908), she has not satisfied a fundamental pleading requirement of asserting her claims against an appropriate individual state official in their official capacity. Plaintiff has brought her claims only against the University; consequently, the *Ex Parte Young* exception is inapplicable. *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1086 (D. Colo. 2017) (dismissing plaintiff's claim for failing to name the appropriate official as a defendant).

Plaintiff also contends Title II of the ADA does abrogate Colorado's sovereign immunity in the educational context. The Court need not engage in this analysis, however, because Title II cannot apply to her claims. *Elwell v. Oklahoma ex rel. Bd. of Regents of Univ. of Oklahoma*, 693 F.3d 1303, 1306 (10th Cir. 2012) ("Employing people isn't a service, program, or activity the university provides" such that it would fall under the purview of Title II.). Plaintiff's employment claims must be brought under Title I of the ADA, and on that the law is clear: Title I does not abrogate a state's sovereign immunity. *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 374 (2001) ("Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I [of the ADA].") Plaintiff has not offered any argument or authority to suggest this conclusion would be any different under the ADAAA. *See Parten v. Alabama Dep't of Tourism*, 100 F. Supp. 3d 1259, 1272 (M.D. Ala. 2015) ("Notably, while the ADAAA's legislative findings specifically identify those holdings which Congress sought to address, they do not mention *Garrett* or the States' Eleventh Amendment immunity.").

The law is similarly clear on Plaintiff's claims pursuant to the ADEA. *Fuller v. Dep't of Child. & Fams.*, 805 F. App'x 601, 605 (10th Cir. 2020) ("[T]he ADEA does not validly abrogate the states' sovereign immunity.") (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91–92 (2000)). To be sure, in her Response, Plaintiff acknowledges the Supreme Court, in *Kimel*, invalidated the provisions of the ADEA

allowing plaintiffs to sue states for monetary damages. [Dkt. 15 at p.5.] Thus, the Court also lacks jurisdiction to hear Plaintiff's ADEA claim.

With respect to her claims under CADA, the Colorado Governmental Immunity Act (CGIA), C.R.S. § 24-10-104 *et seq.*, makes clear Colorado has not waived its Eleventh Amendment immunity for CADA claims to be heard in federal court. *See Harp v. Dep't of Human Servs.*, No. 11-cv-01972-PAB-CBS, 2012 U.S. Dist. Lexis 71559, at *5 (D. Colo. Mar. 9, 2012) (CADA claim against the state in federal court precluded by Eleventh Amendment); *see also Mascheroni v. Bd. of Regents of the Univ. of Cal.*, 28 F.3d 1554, 1556 (10th Cir. 1994) ("Eleventh Amendment shields the Board of Regents from suit in federal court for alleged state law violations."); *Griess v. Colorado*, 841 F.2d 1042, 1044-45 (10th Cir. 1988) (the CGIA did not "waive[] . . . the state's constitutional immunity to suit in federal court").

Plaintiff also asserts a claim for "equitable estoppel" under Colorado law. [Dkt. 1 at ¶¶161-64.] However, the Colorado Supreme Court has explained, "the doctrine of equitable estoppel is not a cause of action at all, but rather a defensive doctrine, which may be invoked to bar a party from raising a defense or objection it otherwise would have, or from instituting an action which it is entitled to institute." *Wheat Ridge Urban Renewal Auth. v. Cornerstone Grp. XXII, L.L.C.*, 176 P.3d 737, 741 (Colo. 2007) (en banc) (quotation omitted); *see also Heartland Biogas, LLC v. Bd. of Cty. Comm'rs of Weld Cty.*, No. 16-cv-03183-RM-NYW, 2017 WL 3730997, at *7 n.7 (D. Colo. Aug. 30, 2017) (same). Thus, equitable estoppel is not a cognizable claim for

relief. To the extent Plaintiff intended to assert a state law claim of promissory estoppel, it too must be dismissed based on Eleventh Amendment immunity. *Doe v. Univ. of Colorado, Boulder through Bd. of Regents of Univ. of Colorado*, 255 F. Supp. 3d 1064, 1086 (D. Colo. 2017) ("[A]bsent a state's consent, the Eleventh Amendment prohibits a federal court from adjudicating state-law claims against a state.").

Because the foregoing claims are barred by the Eleventh Amendment, they must be dismissed without prejudice. *Brown v. Buhman*, 822 F.3d 1151, 1179 (10th Cir. 2016) ("It is fundamental, of course, that a dismissal for lack of jurisdiction is not an adjudication of the merits and therefore dismissal ... must be without prejudice.").

**B.    Title VII**

Plaintiff contends she was discriminated against and subjected to a hostile work environment in violation of Title VII because she is a member of the Church of the Latter-Day Saints. She also contends the University unlawfully retaliated against her for engaging in activity protected by Title VII.

**1.    Discrimination and Hostile Work Environment Based on Religion**

Under Title VII, it is unlawful "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "[A] prima facie case of discrimination must consist of evidence that (1) the victim belongs to a protected

9

class; (2) the victim suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination." *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).

To establish a prima facie case of hostile work environment, a plaintiff must show: (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) it must stem from the animus against a protected class to which the defendant thinks the plaintiff belongs. *See Bloomer v. United Parcel Serv., Inc.*, 94 F. App'x. 820, 825 (10th Cir. 2004). A showing of pervasiveness requires more than a few isolated incidents of religious-based enmity. *Id.* A plaintiff must show that the workplace was permeated with discriminatory intimidation, ridicule, and insults sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. *Id.*

The allegations in the Complaint specifically related to Plaintiff's religion are limited to the following:

- Plaintiff is a member of the Church of the Latter-Day Saints [Dkt. 1 at ¶12.]

- Plaintiff was the sole member of her team who belonged to the Church. [*Id.* at ¶35.]

- After Church leadership issued a determination concerning the status of children of same-sex marriages, Dr. Kent (who disagreed with the

Church's determination) became upset and attributed it to Plaintiff. [*Id.* at ¶37.]

With respect to her discrimination claim, Plaintiff's allegations do not connect any religious animus to her adverse employment action. There is no question that termination of employment constitutes an adverse employment action, but the allegations in the Complaint contend Plaintiff was terminated based on her age and a perceived disability. Consequently, her Title VII discrimination claim must be dismissed.

Turning to her hostile work environment claim, Plaintiff alleges Dr. Kent became "upset" with Plaintiff's church and attributed it to Plaintiff. She also alleges Dr. Kent and another (unnamed) colleague would "giggle and titter to one another at Plaintiff's expense, alluding to her age, among other things, in her presence." [Dkt. 1 at ¶36.] But even assuming the "other things" included Plaintiff's religion, these are insufficient to establish a hostile work environment. Title VII is not a "general civility code." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012). Thus, statements that provoke offensive feelings in an employee, or simple rude, arrogant, or boorish behavior at work is not sufficiently pervasive to rise to the level of a hostile work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

Plaintiff also alleges she reported to the Office of the Ombudsman she was a victim of a hostile work environment and harassment. [Dkt 1. At ¶39.] She says she reported that her colleagues ignored, marginalized, and made her feel unwelcome,

and that they disrespected her with no rational explanation "save for a discriminatory one, related to her age and religion." [*Id*.] This allegation, however, is far too vague to establish a hostile work environment. "The harassment's severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McElroy v. American Family Ins. Co*, 51 F. Supp. 3d 1093, 1111-12 (D. Utah 2014) (citation omitted).

Without additional factual allegations, the Court cannot evaluate whether a plausible hostile work environment existed, and the claim must be dismissed. However, because it is not clear amendment would be futile on these Title VII claims, the dismissal will be without prejudice and the Court will grant Plaintiff leave to file an amended complaint. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile.").

### 2.    Retaliation

To establish a prima facie case of retaliation, Plaintiff must first show: (1) she engaged in protected conduct related to Title VII discrimination; (2) she suffered an adverse employment action thereafter; and (3) there is a causal connection between her protected conduct and the adverse action. If she meets that burden, Defendant

must then articulate a legitimate, non-retaliatory reason for the adverse action and Plaintiff must ultimately show that Defendant's proffered reason(s) is a pretext for retaliation. *Laul v. Los Alamos Nat'l Lab.*, 765 F. App'x 434, 441-42 (10th Cir. 2019).

Plaintiff alleges four activities which possibly constitute protected conduct: (1) reporting to Majcher that Plaintiff felt ostracized based on her age and religion; (2) seeking assistance from the Office of the Ombudsman; (3) filing a charge in December 2019 with the EEOC alleging discrimination based on age, "among other characteristics[;]" and (4) signing a letter with other faculty members in January 2020 containing charges of religious discrimination.

Unfortunately for Plaintiff, there are no factual allegations in her complaint to support a causal connection between the alleged protected conduct and Plaintiff's termination, or the University's failure to reinstate her employment. First, Plaintiff has not specified when her meetings with Majcher or the Office of the Ombudsman took place. Thus, the Court cannot reasonably infer any temporal connection between these meetings and the adverse employment actions. Further, while the allegations in the complaint suggesting Plaintiff's termination was based on her age or perceived disability are legion, by contrast, there are only five (at best) such allegations related to her religion. This highlights the little factual support to infer the alleged Title VII retaliation was based on Plaintiff's complaints of religious discrimination made during these meetings.

With respect to the December 2019 EEOC charge and the January 2020 letter, Plaintiff's allegations also suffer from a temporal disconnect. The decision to uphold her termination was made in October 2020. This ten-month gap is too great a time lapse to support an inference of causation based on timing alone. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("[W]e have held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation. By contrast, we have held that a three-month period, standing alone, is insufficient to establish causation.") (internal citation omitted). Without more, Plaintiff's Title VII retaliation claim must be dismissed without prejudice. And as stated above, the complaint is sparse on factual allegations to plausibly allege the requisite causal connection between any of Plaintiff's complaints that referenced religion and any adverse employment action, namely her firing.

## C.   Rehabilitation Act

The University makes several arguments for the dismissal of Plaintiff's claim pursuant to section 504 of the Rehabilitation Act. "The Rehabilitation Act prohibits discrimination against an 'otherwise qualified individual with a disability.'" *McGeshick v. Principi*, 357 F.3d 1146, 1149 (10th Cir. 2004) (citing 29 U.S.C. § 794). Under the Act, employers are prohibited from discriminating against or failing to accommodate employees who are disabled within the meaning of the Act, and it creates a private cause of action for those individuals subjected to discrimination. *Id.*

### 1.      Statute of Limitations

The Court first addresses Defendant's contention Plaintiff's claim is barred by

the statute of limitations. Section 504 "is a civil rights statute closely analogous to

[42 U.S.C. § 1983]." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th

Cir. 1993). Under section 1983, claims "must be brought within the time period

prescribed by state law for personal injury actions." *Id.* (citing *Wilson v. Garcia*, 471

U.S. 261, 276 (1985)). In Colorado, there is a two-year statute of limitations for

personal injury actions. *See* C.R.S. § 13-80-102. And a civil rights action accrues when

the plaintiff knows or has reason to know of the injury which is the basis of the action.

*Baker*, 991 F.2d at 632; *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (federal

law governs the issue of when an action accrues).

As the Court understands the argument, the University contends the

challenged action in this case is the January 22, 2019 email Majcher circulated to

others, not including Plaintiff, which accused Plaintiff of being in cognitive decline.

The University contends, therefore, Plaintiff's claim accrued at that time. It reasons

the email is what resulted in Plaintiff's suspension and led to the ultimate

termination of her pay and benefits. [Dkt. 22 at p.6.] The Court disagrees.

While the email was the act that set the suspension and termination in motion

(and perhaps constitutes evidence of the alleged discriminatory animus), the

University's dissemination of alleged falsehoods regarding Plaintiff's mental capacity

is not the injury that forms the basis of this case. To be sure, there are no allegations

in the Complaint demonstrating Plaintiff received or knew about this email, or that she had some advanced notice her employment and benefits would terminate in June.

And to the extent the University would rely on the suspension itself as the adverse employment action, the Court notes "suspension" is defined as "[t]he *temporary* deprivation of a person's powers or privileges." *Suspension*, Black's Law Dictionary (8th ed. 2004). Here, Plaintiff was apparently suspended *with* pay and benefits, and there was a possibility she could be reinstated since a suspension is inherently a temporary condition. Thus, the Court is not persuaded the email Plaintiff was unaware of, or her resulting suspension, triggered accrual of the statute of limitations. *Equal Emp. Opportunity Comm'n v. JBS USA, LLC*, 339 F. Supp. 3d 1135, 1186 (D. Colo. 2018) (plaintiff did not suffer a materially adverse employment action because her suspension was remitted and she was paid her wages); *see also White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 803 (6th Cir. 2004) ("suspension with pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action"), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

The injury forming the basis of this action is the June 2019 termination of Plaintiff's employment, compensation, and benefits. [*See* Dkt. 1 at 24.] Consequently, the Court denies the University's request to dismiss this claim based on the statute of limitations. Her claim is timely in relation to the injury which forms the basis of this case.

### 2.    Prima Facie Case

The parties spend a fair amount of time discussing whether Plaintiff requested an accommodation. In fairness, there are allegations in the Complaint regarding Plaintiff's hearing loss and the University's ability to accommodate such a disability, but the Court considers these arguments to be *non sequiturs*. Construing the Complaint in the light most favorable to the Plaintiff, her claim is not one for failure to accommodate. To be sure, Plaintiff apparently had hearing aids and needed no further accommodation in that regard, and it defies logic that she would be expected to request an accommodation for a disability she does not have.[4] Defendant's attempt to shoehorn this case into one for failure to accommodate is rejected.

Rather, Plaintiff brings a claim for discrimination based on a perceived disability. Under the Rehabilitation Act, which incorporates the "standards applied under title I of the Americans with Disabilities Act," the term "disability" includes being regarded as having a limiting impairment. *McGeshick v. Principi*, 357 F.3d 1146, 1150 (10th Cir. 2004) (the ADA expands the term disability to mean, inter alia, being regarded as having an impairment). In this context, a plaintiff must demonstrate: (1) she is disabled within the meaning of the Rehabilitation Act; (2) she

---

[4] Defendant cites ADA regulation 29 C.F.R. § 1630.9 for the principle that an employer is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong. This is a logical conclusion for which the corollary is that an individual only "regarded as" disabled cannot be expected to request an accommodation for a non-existent disability.

is qualified for the job held or desired; and (3) she was discriminated against because of her disability." *Collardey v. All. for Sustainable Energy, LLC*, No. 18-cv-00486-PAB-SKC, 2019 WL 4450201, at \*2 (D. Colo. Sept. 16, 2019) (citing *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018)).

The allegations of the Complaint clearly establish a prima facie case for such a claim. Plaintiff has alleged the University believed her to be in cognitive decline based on allegedly falling asleep during working hours, forgetting patients' names, having erratic behavior, and missing appointments. [Dkt. 1 at ¶¶47, 50, 70-80.] Indeed, even after Plaintiff successfully passed the cognitive exam and was cleared to return to work without restriction, the Complaint alleges the University continued to believe and treat her as being disabled and limited in her abilities, going so far as to suspend and later terminate her employment because it continued to perceive her as being in cognitive decline and incapable of performing her job.

The Complaint also alleges Plaintiff was a capable and qualified doctor with no cognitive difficulties, and that she was terminated because the University perceived her as disabled. [Dkt. 1 at ¶¶70-80.] Consequently, the University's request to dismiss this claim is denied. Plaintiff's claim under Section 504 of the Rehabilitation Act shall proceed.

\*     \*     \*

Based on the foregoing, Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. [Dkt. 10.] Plaintiff is granted leave to file an Amended

Complaint, if any, regarding the claims dismissed without prejudice (and consistent

with this Order), no later than April 4, 2022.

DATED: March 20, 2022.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge